IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THORNTON MILLER,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No. 3:17-cv-03472-X-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* employment discrimination case are Defendant Wells Fargo Bank, N.A.'s (Wells Fargo) Motions to Strike (ECF No. 81) and for Summary Judgment (ECF No. 65). For the reasons stated, the Motion to Strike is DENIED. The Motion for Summary Judgment should be GRANTED, and Plaintiff Thornton Miller's claims should be DISMISSED with prejudice.

**Background**

Miller began working for Wells Fargo in June 2014 as a Home Mortgage Consultant (HMC). Def.'s App. 58 (ECF No. 67); Am. Compl. 3, ¶ 9 (ECF No. 21). He reported to several different sales managers throughout his time with Wells Fargo, culminating with a branch sales manager named Tay Toliver. Def.'s App. 240. As an HMC, Miller was responsible for soliciting borrowers for home loans, informing them what loan options were available to them, and collecting relevant

1

documents from them. *Id.* at 71-73. After gathering all the necessary documents, an HMC like Miller would submit the borrowers' documents to a Home Loan Processor (HLP). *Id.* at 73. The HLP would verify the information in the borrowers' documents submitted by the HMC. *Id.* at 74-75. After the HLP verified all the appropriate information, an underwriter would ultimately decide whether to approve the loan. *Id.* at 75.

Miller was terminated in July 2016 following a history of discipline. In February 2015, Wells Fargo issued Miller an informal disciplinary warning letter in response to two separate incidents—one in which he raised his voice to an HLP and one in which he raised his voice to an underwriter. *Id.* at 439. In November 2015, a Loan Administration Manager, Brian Haefner, mandated that his team would no longer accept calls from or respond to emails or voicemails from Miller, purportedly because Miller was "rude and verbally offensive" to members of the team. *Id.* at 409. The following month, another Loan Administration Manager mandated that his team would no longer communicate directly with Miller either. *Id.* at 398. In February 2016, Wells Fargo issued Miller a final notice in response to two more incidents—one in which he purportedly used profanity on the phone with a colleague at a partner title company and one in which he changed a fee on a particular loan from borrower-paid to lender-paid, against a management decision. *Id.* at 309. Finally, on July 25, 2016, Wells Fargo terminated Miller via a phone call for violations of the code of conduct and lack of professionalism. Tex. Workforce Comm'n Unemployment Hr'g Tr. 12 (ECF No. 77-8). Wells Fargo based

its decision on an email report from a regional lending manager that Miller raised his voice to an underwriter. *Id.* at 11-12. Wells Fargo did not investigate this report, finding the report paired with Miller's past disciplinary history constituted adequate grounds for termination. *Id.* at 17.

Miller claims Wells Fargo's underwriting procedures have a disparate impact on minority borrowers. Am. Compl. 4, ¶ 11. He alleges he complained about these discriminatory lending practices to his manager, to Human Resources (HR), and to the ethics hotline. *Id.* at 4, ¶¶ 11-13. Miller avers that, after he made these complaints, HLPs resisted processing his loans, HLPs and other coworkers became hostile toward him, he was denied a requested transfer to another region, and he was ultimately terminated. *Id.* at 4-5, 8, ¶¶ 13-15, 33. Miller filed a formal charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging retaliation and discrimination on the basis of race, color, and national origin. Def.'s App. 255. Wells Fargo admits that the EEOC then issued Miller a Notice of Right to Sue dated September 22, 2017. Am. Answer 4 (ECF No. 24). Miller filed his lawsuit on December 21, 2017. Compl. (ECF No. 3). In his Amended Complaint, the live complaint in this matter, Miller brings three claims: (1) race discrimination under Title VII; (2) race discrimination under 42 U.S.C. § 1981; and (3) retaliation under Title VII. Am. Compl. 6-9, ¶¶ 19-35.

Wells Fargo has filed a Motion for Summary Judgment, in which it argues: (1) Miller cannot establish a prima facie case of discriminatory discharge under Title VII or § 1981; (2) Miller's claim that he was denied a transfer is barred for

failure to exhaust administrative remedies; (3) Miller cannot establish a retaliation claim because he did not engage in a protected activity and because there is not a casual connection between any complaint and an adverse employment action; and (4) there is no evidence of pretext. Miller filed a response to the motion; and Wells Fargo filed a reply. Thus, the motion is fully briefed and ripe for determination.

## Preliminary Matters

Wells Fargo filed its summary judgment motion on July 22, 2019. The Court allowed Miller until September 11, 2019 to file his response. Order 3 (ECF No. 73). Miller filed a six-page response at 11:58 p.m. on September 11, 2019 (ECF No. 75). He filed an appendix in support of his response at 1:18 a.m. on September 12, 2019 (ECF No. 76). The next week, on September 19, 2019, without leave of court, Miller filed a 38-page document he styled as an amended response to the Motion for Summary Judgment (ECF No. 77) and an accompanying appendix that appears to include the same documents his prior appendix did, plus approximately 150 more pages. Wells Fargo moves to strike Miller's amended response as Miller did not seek leave to amend and did not provide an explanation for his untimely submission. Br. Support Mot. Strike 2 (ECF No. 82). Miller, for his part, relies on Fed. R. Civ. P. 15(a)(1)(B) and contends that he was entitled to amend his response as a matter of course. Resp. Mot. Strike 2 (ECF No. 83). Rule 15, however, only applies to amending *pleadings*. To properly amend his response to the Motion for Summary Judgment, Miller was required to seek leave of court. *See, e.g.*, *Reed v. Efficient Networks, Inc.*, 2004 WL 1717369, at *1 n.1 (N.D. Tex. July 30, 2004)

4

(noting that amended response to motion for summary judgment filed without leave had been struck earlier in the case). Miller's amended response is thus improper, and it is consistent with his pattern of disregard for Court-imposed deadlines. *See, e.g.*, Order 2-3 (noting Miller's "lack of diligence" in "attempting to comply with the deadlines imposed by the Court"). However, in the interest of disposing of cases on the merits rather than on procedural technicalities, the Court DENIES Wells Fargo's Motion to Strike and considers Miller's amended response and accompanying appendix in addressing the Motion for Summary Judgment.

Regarding the summary judgment evidence, Miller appears to dispute the following: (1) Miller claims that Wells Fargo has provided an "excerpt" of a phone call in which he complained he and his borrowers received disparate treatment, but that he did not receive a "complete record" of the call from Wells Fargo despite his discovery requests for it. Am. Resp. 25. (2) Miller argues that the Court should disregard Wells Fargo's summary judgment evidence because it is "all hearsay, [third] party accounts from persons not present nor apart [*sic*] of conversations or allegations that were put forth." *Id.* at 33. The Court construes these arguments as objections to the summary judgment evidence. The objections are OVERRULED. First, to the extent Miller contends Wells Fargo violated any of its discovery obligations by withholding documents Miller requested from it, the Court notes that Miller does not indicate whether he served proper discovery requests on Wells Fargo at all. And, in any event, the proper vehicle to assert that an opponent has not provided what was requested through discovery is a motion to compel.

5

Discovery has been closed for almost a year. *See* Sched. Order 2 (ECF No. 23). Miller did not file a motion to compel Wells Fargo to turn over the purported "complete record" of the phone call at issue. Second, parties may meet their respective summary judgment burdens by tendering materials *capable* of being reduced to admissible evidence. *Lee v. Offshore Logistical and Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). Thus, Miller's argument that the Court should not consider Wells Fargo's summary judgment evidence because it is inadmissible hearsay is inapposite.

## Summary Judgment Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citations omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R.

Civ. P. 56(e)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

However, the party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). If a party fails to address another party's assertion of fact as required by Rule 56, the court may consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials show that the movant is entitled to it. *Reeves v. Mkt. Ctr. Mgmt. Co.*, 2014 WL 764145, at *1-2 (N.D. Tex. Feb. 26, 2014) (citing Fed. R. Civ. P. 56(e)(2)-(3)). The fact that a litigant is proceeding *pro se* in a particular case does not alter these principles. *Id.*

## Analysis

I.  <u>Wells Fargo is entitled to summary judgment on Miller's Title VII and § 1981 discrimination claims.</u>

To establish discriminatory discharge under Title VII and § 1981, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he was discharged; and (4) the defendant treated people under nearly identical circumstances outside the protected class differently. *Baker v. Exxon Chem. Ams.*, 1995 WL 581611, at *1 (5th Cir. Aug. 29, 1995) (per curiam) (enumerating discriminatory discharge elements); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("To establish a claim of disparate treatment, [the employee] must show that [the employer] gave preferential treatment to [a person outside the protected class] under 'nearly identical' circumstances."); *Pratt v. City of Hous.*, 247 F.3d 601, 606 n.1 (5th Cir. 2001) ("The elements of the claims under Title VII and 42 U.S.C. § 1981 are identical. We therefore evaluate both claims using the same analysis.").

The summary judgment evidence establishes that Miller is an African American man and that he was discharged. Def.'s App. 30, 156. Moreover, the Court assumes without deciding that he was qualified for his position as an HMC. However, Miller cannot survive summary judgment on either his Title VII or his § 1981 discriminatory discharge claims because he has not adduced summary judgment evidence that others outside his protected class in nearly identical circumstances were treated differently than he was. Miller alleges that two of his

8

white counterparts had "similar disputes with HLP's and [u]nderwriters and were not disciplined in the same manner." Am. Resp. 5. Moreover, Miller alleges that a Wells Fargo personal banker expressed concern to an HLP that others were discriminating against Miller. *Id.* at 27. But Miller's allegations alone are not enough to overcome Wells Fargo's summary judgment motion. *Esquivel*, 2016 WL 6093327, at *2 (holding that the party opposing the summary judgment motion must identify specific *evidence* in the record and state the precise manner in which that evidence supports the party's claim) (citing *Ragas*, 136 F.3d at 458).

Miller admits in his deposition that he was not aware whether the concerned personal banker had knowledge of how other HMCs were treated. Def.'s App. 229. And Miller cites no evidence in support of his contention that his similarly situated white counterparts were treated differently than he was when they had disputes with HLPs. Miller's almost-500-page appendix supporting his amended summary judgment response is unorganized and unlabeled except that the first document in his appendix, his 311-page HR file, appears to be his "Exhibit C1." But Miller does not direct the Court to portions within it or the other documents in his appendix that support his claim that his white counterparts were treated more favorably than he was. And the Court does not have to search for such support. *Ragas*, 136 F.3d at 458.

Wells Fargo is entitled to summary judgment on Miller's Title VII and § 1981 discrimination claims because there is insufficient evidence to raise a genuine fact

question that Wells Fargo treated people outside Miller's protected class more favorably than Miller.

II. <u>Wells Fargo is entitled to summary judgment on Miller's Title VII retaliation claims.</u>

To establish a retaliation claim under Title VII, the plaintiff must show: (1) he was engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). Protected activity under Title VII is "opposition to any practice rendered unlawful by Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Title VII prohibits an employer from discriminating against any of its *employees or applicants for employment*. 42 U.S.C. § 2000e-3(a). Indeed, "Title VII does not protect opposition to all forms of unscrupulous conduct." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) (holding complaints of unfair work distribution, unpaid overtime, and selective enforcement of lunch policy are not protected activities). *See also Martin v. The Kroger Co.*, 65 F. Supp. 2d 516, 557 (S.D. Tex. 1999) ("Discriminatory comments or actions directed at persons who are not employees . . . do not fall within the scope of Title VII."); *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (concluding that "opposing discrimination by co-employees against non-employees" was not protected activity under Title VII); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 n.16

(11th Cir. 1997) (noting that a retaliation claim based on opposition of unlawful discrimination against customers "could not proceed under the familiar Title VII retaliation statute" because the plaintiffs did not allege that they were discriminated against "for opposing an unlawful *employment* practice") (emphasis in original); *Crowley v. Prince George's Cty.*, 890 F.2d 683, 687 (4th Cir. 1989) ("To find Title VII protection for whistle-blowers on each and every instance of discrimination on the part of an employer is more than we think the plain language of its provisions will support.").

Miller claims that he suffered three forms of retaliation: (1) hostility and extra scrutiny from his colleagues; (2) denial of a transfer request; and (3) termination. Am. Compl. 8, ¶ 32-33. Miller further claims that he suffered these three forms of retaliation in response to his lawful complaints of unfair lending practices to Wells Fargo's Human Resources and Ethics departments. *Id.* at 8, ¶ 32. Such complaints are not protected activities under Title VII and thus cannot form the basis of a Title VII retaliation claim. In complaining to Wells Fargo about its lending practices, Miller did not oppose practices made unlawful by *Title VII*. Indeed, Title VII only protects against discrimination in the workplace by employers against employees. *See* 42 U.S.C. § 2000e-3(a). Borrowers obtaining loans from Wells Fargo are not employees, and discriminatory lending practices are not discriminatory employment practices. Thus, Miller's complaints to Wells Fargo about its purportedly unfair lending practices did not constitute protected activities. And, to the extent Miller alleges he was retaliated against for

11

complaining about a hostile work environment, such complaints are also not protected. He alleges he was subject to a hostile work environment spurred by his reports about the purported unfair lending practices. Am. Compl. 5, ¶ 14 ("Shortly after reporting the discriminatory actions observed on the loans he submitted, Plaintiff . . . noticed the work environment became very hostile and uncomfortable for him."). But a hostile work environment claim requires that the alleged harassment be based on a Title VII protected status. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Miller alleges that Wells Fargo has provided "[i]nconsistent and shifting explanations" as to whether his previous discipline record played a role in his termination. Am. Resp. 7. Particularly, Miller alleges that Haefner's testimony before the Texas Workforce Commission contradicted itself as to whether prior disciplinary history played a role in the decision to terminate Miller or whether he was terminated based solely on the email report that Miller raised his voice to another colleague. *See id.* at 6. Citing EEOC enforcement guidance, Miller argues that such shifting explanations as to the reason for termination can raise an inference of retaliatory intent on the part of the employer. *Id.* at 7. But Miller's argument goes to the causal connection element of the retaliation claim. Miller cannot establish a causal connection between a protected activity and an adverse employment action in this case because Miller was not engaged in a protected activity.

Finally, in support of his retaliation claim, Miller points to the record as follows: (1) at "ECF 66 pg. 7-15" a loan administration executive noted that "retaliation began and continued to escalate" (*Id.* at 19); (2) on "page 1 of Exhibit E," Toliver "acknowledged that discrimination complaint and concern was voiced to him" (*id.* at 27); (3) in "Exhibit 2-D starting at page 260" Toliver "made report of conduct as it appears, he was participating in the retaliation and materially adverse actions that Defendant enacted on Mr. Miller" (*id.* at 27-28); and (4) "[o]n page 49-50 Exhibit C1" HR found no action egregious enough to warrant termination (*id.* at 28). None of Miller's citations point to facts supporting his claim for retaliation or fact issues. First, document number 66 is Wells Fargo's brief in support of its Motion for Summary Judgment, which argues that Miller has *not* met his burden on summary judgment with respect to his retaliation claim. Second, Wells Fargo provides neither an Exhibit E nor an Exhibit C1. And the Court cannot discern from Miller's appendix which documents are his Exhibit E. Moreover, although Miller's HR file appears to be his exhibit C1, nothing on pages 49 or 50 in the exhibit supports Miller's claim or raises a fact issue. Finally, while Wells Fargo's Exhibit 2-D does reflect that Toliver reported Miller's misconduct to HR, such reports to do not support Miller's claim of retaliation because they do not establish Miller was engaged in a protected activity.

Wells Fargo is entitled to summary judgment on Miller's Title VII retaliation claim because it has demonstrated there is an absence of evidence in the summary judgment record that Miller was engaged in a protected activity. Miller has not met

13

his burden on summary judgment by pointing to such evidence or a fact issue.

## Recommendation

For the foregoing reasons, Wells Fargo's Motion to Strike (ECF No. 81) is DENIED. Wells Fargo's Motion for Summary Judgment (ECF No. 65) should be GRANTED, and Miller's claims and causes of action against Wells Fargo should be DISMISSED with prejudice.

**SIGNED** February 18, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).